## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ABUNBIO LENDECHL LOPEZ,** | * | |
| **Petitioner,** | * | |
| **v.** | * | **Civ. No. DLB-26-2101** |
| **VERNON LIGGINS, *et al.*,** | * | |
| **Respondents.** | * | |

### MEMORANDUM OPINION AND ORDER

Abunbio Lendechl Lopez is a native and citizen of Mexico who entered the United States without inspection in 2002.[1] ECF 1, ¶ 22. He has lived here ever since, building a life in Maryland and raising two children. ECF 7, at 1. "He has no known criminal history anywhere in the world." ECF 1, ¶ 23.

On May 27, 2026, Lendechl was detained by Immigration and Customs Enforcement ("ICE") while driving to work. *Id.* ¶ 25. That same day, while he was being held at the ICE Baltimore Hold Room, Lendechl filed a petition for a writ of habeas corpus. *Id.* ¶ 17. In his petition, Lendechl requested that he be released immediately or, in the alternative, granted a bond hearing before "a truly neutral and impartial adjudicator[.]" *Id.* ¶ (4) (prayer for relief).

On May 29, 2026, the Court granted Lendechl's petition in part. ECF 6. The Court ordered, in relevant part, that Lendechl was not subject to mandatory detention under 8 U.S.C. § 1225(b) and was entitled to a bond hearing "within 14 days of [his] filing of a motion with the Immigration Court" consistent with governing regulations. *Id.* at 2. The Court also ordered that, at the bond hearing, the Immigration Judge ("IJ") should "meaningful[ly] consider[]" the "applicable, relevant

---

[1] There are conflicting spellings of Lendechl's name in the record. The Court adopts the spelling used by Lendechl's counsel in the petition and motion to enforce.

factors under *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006)[.]" *Id. Guerra* states that, in determining whether a noncitizen merits release on bond, an IJ may consider "any or all" of the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry into the United States.

24 I&N Dec. at 40.

That same day, after the Court issued its Order, a "duty attorney" filed the Order with the Immigration Court, classifying the Order as a "Pre-[Notice to Appear] Bond Redetermination Request." ECF 7, at 2; ECF 10, at 2. On June 1, 2026, the Immigration Court scheduled a bond hearing for June 4, 2026. ECF 10, at 3. The next day, counsel for the respondents learned that the hearing had been scheduled and informed Lendechl's counsel. *Id.* Working on a tight timeline, Lendechl's counsel was able to submit a packet of documentary evidence to the Immigration Court in support of Lendechl's release, including letters of support, family photos, tax returns, and proof of employment. ECF 7, at 2; *see also* ECF 7-1 (evidence packet, under seal).

A bond hearing was held on June 4, 2026, at the LaSalle Immigration Court in Jena, Louisiana, before IJ Jon Calandruccio. ECF 10, at 1; Recording of Bond Hr'g ("Hr'g Rec.") 0:15–0:25.[2] At the outset of the hearing, the IJ said that in adjudicating the bond hearing, he would consider the factors set forth in *Guerra*. Hr'g Rec. 3:35–3:47. The IJ heard argument from Lendechl's counsel, who emphasized Lendechl's ties to Maryland, employment history, support

---

[2] The recording is not available via CM/ECF but is on file with the Court.

from his community, U.S. citizen children, and lack of criminal history. *Id.* at 4:30–10:45. Counsel also stated that Lendechl intended to seek cancellation of removal, a form of immigration relief that, among other things, requires a noncitizen to show that his removal would "result in exceptional and extremely unusual hardship" to qualifying U.S. citizen or lawful permanent resident family members. *Id.* at 8:00–8:05; *see* 8 U.S.C. § 1229b(b)(1)(D). Counsel stated that Lendechl was "prima facie eligible" for this form of relief. Hr'g Rec. 7:58–8:01. Throughout counsel's presentation, the IJ asked several questions, including when Lendechl entered the United States, *id.* at 5:04, whether Lendechl owns his home, *id.* at 6:10, and the extent of Lendechl's employment and education history, *id.* at 8:55. The IJ also confirmed that Lendechl had two U.S. citizen children, *id.* at 9:43, asked about his prior immigration violations, *id.* at 9:47, asked whether Lendechl had previously missed any court appearances, *id.* at 10:02, and confirmed that Lendechl intended to seek cancellation of removal, *id.* at 10:21. At no point did Lendechl's counsel seek a continuance or express that she had been unable to fully prepare for the hearing.

The IJ then heard argument from the Department of Homeland Security ("DHS"), which opposed bond. DHS's counsel argued that Lendechl was a flight risk because, among other things, it was impossible to ascertain a fixed address or certain work history from the records he had submitted; he had worked without authorization; he had never sought any kind of lawful immigration status during his more than twenty years in the United States; and he would have to clear a high bar to obtain cancellation of removal. *Id.* at 10:53–17:05. The IJ allowed Lendechl's counsel to respond, *id.* at 17:18, and admonished DHS's counsel not to interrupt her when DHS's counsel interjected during her presentation, *id.* at 18:25. In her response, Lendechl's counsel pointed out that Lendechl had not filed any applications for affirmative immigration relief with United States Citizenship and Immigration Services because he was not eligible for relief that

could be provided by his U.S. citizen family members and his children were too young to petition on his behalf. *Id.* at 20:00–20:29. When DHS's counsel again interrupted Lendechl's counsel, the IJ again admonished him to let her finish. *Id.* at 22:00–22:10.

Following a brief response by DHS's counsel, the IJ made his ruling:

I'm going to weigh what I feel is relevant in this case. Though I don't like how – I don't agree with a lot of how, maybe how things are being done, in terms of how people are being placed into detention, it is not my decision to use that as a factor into my decision base. So I am taking emotion out of all my decisions, and so in this case, although I am extremely sympathetic to the respondent, he has been in the country for 20 years, he has not interacted with any immigration individuals, and his children are 13 and 14 years old and they cannot petition him until they're 21. So the pathway to citizenship in this case, besides a [cancellation of removal] application, which you have to prove exceptional, extreme, undue hardship, and that is a very high standard. And so I don't – I – under [*Guerra*] I can look at any factors I deem relevant, I have broad authority given to me by the Attorney General, and so what I'm looking at in this case is the fact that his pathway to citizenship right now is attenuated, it's speculative, and I believe this is the correct forum to adjudicate it because it can be adjudicated in a very expedient manner, rather than him being released and it taking a bunch of time for that to occur. Therefore I'm going to deny the claim for a bond in this case, and I – I will allow [Lendechl's counsel] to state on the record her appeal, and then I will issue the Order.

*Id.* at 25:53–27:51 (cleaned up). Lendechl's counsel objected that "speculation" about Lendechl's likelihood of obtaining immigration relief was not one of the enumerated *Guerra* factors. *Id.* at 28:05–28:11. The IJ stated that he had respect for this Court's Order, that under the authority granted him by the Attorney General he had broad discretion to consider factors that he deemed relevant, and that the factor he had identified was the factor he deemed relevant. *Id.* at 29:33–30:21. Lendechl's counsel reserved appeal. *Id.* at 30:51.

According to ICE's online detainee locator, Lendechl is currently detained at the Richwood Correctional Center in Richwood, Louisiana.

The same day the IJ denied bond, Lendechl filed a motion to enforce the Court's May 29, 2026 Order, arguing that "the IJ's bond decision violated [that Order] in at least four ways": (1) it

4

was held on DHS's motion instead of Lendechl's, which deprived Lendechl of an opportunity to adequately prepare; (2) the IJ failed to meaningfully consider the *Guerra* factors; (3) the IJ placed dispositive weight on Lendechl's prospects for citizenship, which Lendechl contends is neither contemplated by *Guerra* nor relevant to the bond determination; and (4) the IJ "gave no reason why monetary bond could not mitigate any perceived risk of flight, as the Fifth Amendment's Due Process Clause demands." ECF 7, at 3–4. Lendechl asks for immediate release. *Id.* at 10. The motion is fully briefed. ECF 10 & 11. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## I.

The Immigration and Nationality Act authorizes the Attorney General to detain a noncitizen pending the outcome of removal proceedings. *See* 8 U.S.C. § 1226. Section 1226(a) allows the Attorney General to release noncitizens on bond or conditional parole. The discretionary decision to release a noncitizen on bond or to deny bond is unreviewable by district courts. Section 1226(e) states: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court clarified the scope of § 1226(e)'s bar on judicial review over actions or decisions of the Attorney General. The *Jennings* Court explained that "§ 1226(e) precludes an alien from 'challenging a discretionary judgment by the Attorney General or a decision that the Attorney General made regarding his detention or release.'" 583 U.S. at 295 (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)) (cleaned up). But § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." *Id.* (quoting *Demore*, 538 U.S. at 517) (cleaned up).

Following *Jennings*, the Fourth Circuit in *Miranda v. Garland* confirmed that judicial review of the "Attorney General's actions and decisions in individual proceedings" is barred by § 1226(e). 34 F.4th 338, 353 (4th Cir. 2022). But "a constitutional challenge to" discretionary bond procedures that are "categorical, across-the-board [], as opposed to the application of § 1226 to specific cases, is beyond the scope of § 1226(e)." *Id.* at 352. *Miranda* involved a "categorical, across-the-board" constitutional challenge to the process required at § 1226(a) bond hearings. *Id.* at 358. Specifically, one of the petitioners argued that "the process leading to detention [was] unconstitutional because the Attorney General place[d] the burden of proof on him, adopt[ed] the preponderance of evidence standard and fail[ed] to require every immigration judge to consider either the alien's ability to pay any amount of bond assessed or alternatives to detention." *Id.* Characterizing this argument as a procedural due process challenge, the Fourth Circuit applied the *Mathews v. Eldridge*, 424 U.S. 319 (1976), framework and found that the challenged bond hearing procedures did not violate the due process clause.[3] *See Miranda*, 34 F.4th at 365.

II.

Applying these principles to this case, the Court finds it lacks jurisdiction to consider Lendechl's second, third, and fourth challenges to the bond hearing.

Lendechl does not challenge the "constitutionality of the statutory framework" of 8 U.S.C. § 1226, *see Jennings*, 583 U.S. at 295, or the constitutionality of "categorical" discretionary bond hearing procedures applied "across-the-board," *see Miranda*, 34 F.4th at 352. He does not argue, as the petitioner did in *Miranda*, that the IJ followed bond procedures adopted by the Attorney

---

[3] The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

General that denied him procedural due process under *Mathews*. Instead, in his second, third, and fourth challenges to the bond hearing, Lendechl argues that the IJ failed to meaningfully consider the *Guerra* factors, placed undue weight on an irrelevant factor (Lendechl's pathway to citizenship), and failed to justify his implicit conclusion that no bond amount could ensure Lendechl's future appearance.

At the outset, the Court must correct the record in two respects. First, contrary to Lendechl's argument, it is clear from the recording of the bond hearing that the IJ considered the *Guerra* factors. The IJ asked counsel questions pertaining to almost all the *Guerra* factors. For example, the IJ asked whether Lendechl owned his home, which is relevant to whether he had a "fixed address in the United States"; when Lendechl first entered the country, which is relevant to his "length of residence in the United States"; what Lendechl's employment history was; whether Lendechl had previously missed court; and whether Lendechl had any prior immigration violations. The IJ emphasized one factor in making his decision, but that does not mean that he failed to consider the rest. And in any event, nothing in the Court's Order or in *Guerra* required the IJ to consider all of the *Guerra* factors. *See Guerra*, 24 I&N Dec. at 40 (stating that an IJ may consider "any or all" of the *Guerra* factors in making a bond determination); ECF 6, at 2 (ordering the IJ to consider "applicable [and] relevant" *Guerra* factors).

Second, Lendechl is incorrect that the factor on which the IJ based his decision was irrelevant. The IJ reasoned that Lendechl was a flight risk because his children were too young to petition for lawful permanent residence on his behalf and further surmised that an application for cancellation of removal was unlikely to succeed because Lendechl likely could not show "exceptional and extremely unusual hardship" to a qualifying family member. *Guerra* states that, in determining whether to release a noncitizen on bond, an IJ may consider the noncitizen's "family

ties in the United States, *and whether they may entitle the alien to reside permanently in the United States in the future*[.]" 24 I&N Dec. at 40 (emphasis added). By considering whether Lendechl could obtain permanent lawful status through his family members, the IJ did just that. Indeed, Lendechl's counsel evidently agreed that this factor was relevant; after all, as part of her argument for release, she contended that Lendechl was "prima facie eligible" for cancellation of removal.

With these observations in mind, it is clear that—in claiming that the IJ failed to "meaningfully consider" the *Guerra* factors and placed undue weight on his likelihood of obtaining citizenship—Lendechl is arguing that the IJ improperly weighed the evidence. This Court may well have evaluated the *Guerra* factors differently had it stood in the IJ's shoes. But weighing the relevant bond factors and denying bond after considering them are decisions within the discretion of the IJ. This Court does not have jurisdiction to review discretionary decisions made by the IJ during Lendechl's bond hearing.

Similarly, the Court also lacks jurisdiction to review Lendechl's claim that the IJ failed to properly justify his conclusion that no amount of bond could ensure Lendechl's future appearance. That, too, is a challenge to an "action[] and decision[] in [an] individual proceeding[]," *see Miranda*, 34 F.4th at 353—namely, to a conclusion that the IJ drew regarding Lendechl's entitlement to bond. Section 1226(e) likewise deprives this Court of jurisdiction over this claim.

III.

Lendechl's remaining challenge to the bond hearing—that it was not scheduled on his own motion—presents a slightly different scenario. In making this argument, Lendechl does not challenge any decision that the IJ made regarding his individual entitlement to bond. Instead, Lendechl challenges the manner in which the hearing was scheduled. Specifically, Lendechl argues that the Immigration Court held the hearing on the government's motion, rather than his own, even

8

though the Court ordered that the bond hearing "be held within 14 days of [*Lendechl's*] filing of a motion with the Immigration Court[.]" ECF 6, at 2 (emphasis added). The Court does not read *Miranda* to foreclose such a claim, any more than it would bar a claim that the respondents defied the Court's Order by refusing to hold a bond hearing at all. The Court has jurisdiction to review this claim.

Lendechl is correct that the hearing was not scheduled in compliance with this Court's Order. The Order clearly stated that Lendechl should file a motion for a bond hearing. But he never got that chance. Instead, the very day this Court ordered a bond hearing, a government attorney filed the Order with the Immigration Court as a "bond redetermination request," which prompted the Immigration Court to schedule Lendechl for a bond hearing. Lendechl was not told about the hearing until two days before it was scheduled to occur. The manner in which the bond hearing was scheduled did not comport with the Court's Order and put Lendechl and his counsel in a difficult position.

Nevertheless, the Court cannot grant Lendechl's motion to enforce on this basis. First, the violation of the Court's Order was harmless. *See, e.g.*, *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (explaining, in the context of reviewing denial of noncitizen's asylum application, that "[h]armless-error analysis applies in immigration cases" and "reversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached'") (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). Lendechl was able to submit a substantial packet of documentary evidence in support of release. Moreover, at no point during the hearing did Lendechl's counsel object to the manner in

which the hearing had been scheduled or request more time to prepare.[4] Lendechl argues that had he had additional time, he could have "file[d] written argument . . . outlin[ing] for the IJ his obligations under this Court's [O]rder and how [Lendechl's] evidence support[ed] his position under the law" and that he could have consulted with his attorney before the hearing. ECF 7, at 6. But Lendechl does not explain what he would have said in any written submission or how that would have changed the IJ's reasoning; nor does he explain how any pre-hearing consultation with counsel would have altered the outcome. Indeed, the record shows that the IJ understood the Court's Order and that the IJ gave Lendechl sufficient opportunity at the hearing to explain how the evidence supported his position.

Second, even if Lendechl were prejudiced by the violation of the Court's order, Lendechl has not shown that the relief he seeks in his motion to enforce—immediate release—is an appropriately tailored remedy for the violation. *See, e.g.*, *United States v. Bergman*, 746 F.3d 1128, 1133 (10th Cir. 2014) (Gorsuch, J.) ("[I]n habeas (as most elsewhere) remedies must be tailored to the wrongs they seek to redress."). Logically, the proper remedy for a bond hearing held with inadequate notice would not be outright release; it would be a new bond hearing held with adequate notice and at Lendechl's request. But Lendechl only requests the former. He cites several cases in connection with his argument that release is appropriate, but those cases are inapposite. *See Wolfe v. Clarke*, 718 F.3d 277, 291 (4th Cir. 2013) (stating that district court could properly order habeas petitioner's release where court ordered that he be retried within a set time frame *or* released and respondents failed to comply with either option); *Quituizaca v. Barr*, No. 20-CV-403-LJV, 2021

---

[4] Lendechl argues that he was "backed . . . into a corner" because if he did not "proceed on [the] [r]espondents' timeline" he would have "forfeit[ed] the hearing." ECF 7, at 6. But there is no indication from the record that the IJ would have denied Lendechl a reasonable continuance had he sought it.

WL 6797494, at *5–8 (W.D.N.Y. Jan. 5, 2021) (directing habeas petitioner's release based on substantive defects in IJ's bond analysis that ran afoul of court's order granting habeas relief); *A.D. v. Oddo*, No. 25-460J, 2026 WL 101476, at *5 (W.D. Pa. Jan. 14, 2026) (granting habeas petition and ordering bond hearing without discussing remedies for possible future noncompliance); *Guerrero Sanchez v. Sabol*, No. 1:15-CV-2423, 2016 WL 7426129, at *6–9 (M.D. Pa. Dec. 23, 2016) (contemplating that court could order release for noncompliance with its order but ultimately ordering redo of bond hearing before district court, not release, as remedy for several deficiencies in IJ's bond hearing, including failure to conduct individualized analysis, overreliance on petitioner's criminal history, and court's view that government failed to carry its burden of proof). Even if the violation of the Court's Order warranted *some* form of relief, Lendechl has not adequately explained why immediate release—the only form of relief he seeks—is the remedy.

Therefore, it is this 3rd day of August, 2026, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Lendechl's motion to enforce, ECF 7, IS DENIED; and

2. The Clerk SHALL CLOSE this case.

_____
Deborah L. Boardman
United States District Judge

11